IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| O'NEILL AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERATED MUTUAL INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:24-cv-02237-HLT |

## MEMORANDUM AND ORDER

Plaintiff O'Neill Automotive, Inc., owned property where it operated a car dealership. As it was preparing to sell the land, inspections revealed that an oil-water separator on the property caused an underground environmental contamination. O'Neill eventually sought coverage from Defendant Federated Mutual Insurance Company under a policy that provided pollution liability coverage. Federated denied coverage, however, because the pollution incident arose underground and, under the relevant policy provision, the policy only provides coverage for a release of pollutants aboveground. Federated also later cited the timing of the claim made by O'Neill, which was not made until a year and two days after the policy ended and well after O'Neill first learned of the issue.

O'Neill filed this suit alleging a breach of contract. Federated asserts several defenses. Both parties move for summary judgment and raise several issues. The Court finds that the insurance policy only applies to the spill, overflow, or release of pollutants "on or above the surface of the ground." It is undisputed that the release of pollutants was entirely underground. Coverage does not apply under the unambiguous language of the policy, and Federated is entitled to summary judgment. Federated's motion (Doc. 53) is therefore granted on this basis. The Court does not need

to reach the other issues raised by the parties in their motions. The Court denies as moot the remainder of Federated's motion and O'Neill's motion (Doc. 56) and denies as moot the motion to exclude expert testimony (Doc. 54).

I.      BACKGROUND[1]

O'Neill owned property located at 7979 Metcalf Avenue in Overland Park, Kansas. SOF 1. The property had two oil-water separators installed in 1985. SOF 2. These separators received runoff from a service and auto shop on the property. SOF 4. They were designed to separate petroleum-based substances from water and discharge the water into the sewer system. SOF 5.

In March 2020, an investigation related to the sale of the property revealed some potential environmental concerns. SOF 25-26, 30, 131. Terracon was retained to address the environmental concerns. SOF 34. Terracon performed a limited site investigation in June and July 2020. SOF 39. Terracon found evidence of environmental contamination around one of the oil-water separators. SOF 133. In June 2020, Terracon recommended that O'Neill apply for a voluntary clean-up program with the Kansas Department of Health and Environment ("KDHE"). SOF 36. In July 2020, O'Neill, through a related entity, entered into a voluntary clean-up agreement with KDHE. SOF 38. At a minimum, O'Neill was aware that there was an environmental problem at the site by July 31, 2020. SOF 42.

On May 1, 2020, O'Neill purchased a Pollution Liability Policy from Federated. SOF 6. The policy had a retroactive date of May 1, 2018. SOF 7. The policy states, in part, that Federated "will pay on behalf of the insured those sums in excess of any deductible amount that the insured becomes legally obligated to pay as . . . 'clean up costs' because of 'environmental damage' to

---

[1] The following facts are undisputed and construed in favor of the non-moving party. The Court has considered both motions in their entirety but only includes the facts relevant to the analysis in this order. "SOF" refers to the statement of facts listed in Federated's supporting memorandum, Doc. 60, and the additional numbered facts in O'Neill's response, Doc. 65.

2

which this insurance applies." SOF 9; *see also* Doc. 60-2 at 19 (quoting Subsection 1.a.). The policy goes on to state:

> 1. Insuring Agreement
>
>    . . . .
>
>    b. This insurance applies to "bodily injury", "property damage", or "environmental damage" only if:
>
>       (1) The "bodily injury" or "property damage" or "environmental damage" is caused by a "pollution incident" from an "insured site" in the "coverage territory;"
>
>       (2) The "bodily injury" or "property damage" or "environmental damage" is caused by a "pollution incident" that commences on or after the Retroactive Date shown in the Declarations for the applicable location;
>
>       (3) The insured's responsibility to pay compensatory damages because of "bodily injury" or "property damage" or "cleanup cost" [sic] because of "environmental damage" is determined in a "suit" on the merits in the "coverage territory" or in a settlement made with our prior consent; and
>
>       (4) A claim for compensatory damages because of "bodily injury" or "property damage", or for payment of "cleanup costs" [sic] because of "environmental damage" is reported in accordance with Section 1, Part 2. Claims Reporting.
>
>       (5) The insured provides proof there was a "pollution incident" from an "insured site" which arose directly from:
>
>           (i) A spill, overflow or release of "pollutants" on or above the surface of the ground which commences on or after the Retroactive Date stated in the Declarations for the applicable location and which is **reported to us within 120 hours of the spill, overflow or release**; or
>
>           (ii) An emission, discharge, release or escape of "pollutants" from a "waste facility" which commences, in its entirety, on or after the Retroactive Date stated in the Declarations for the applicable location and we are promptly notified of the emission, discharge, release or escape.

SOF 14-16, 22 (including response); *see also* Doc. 60-2 at 19.[2] Subsection 1.b.(5) is modified by an endorsement titled "Limited Coverage for Aboveground Tanks." SOF 22 (including response); *see also* Doc. 60-2 at 30. That endorsement states that Subsection 1.b.(5) is replaced with the following provision:

> (5) The insured must provide proof that there was a "pollution incident" from an "insured site" which arose directly from:
>
> (i) A spill, overflow or release of "pollutants" on or above the surface of the ground which commences on or after the Retroactive Date stated in the Declarations for the applicable location and which is **reported to us within 120 hours of the spill, overflow or release**; or
>
> (ii) An emission, discharge, release or escape of "pollutants" from a "waste facility" which commences, in its entirety, on or after the Retroactive Date stated in the Declarations for the applicable location and we are promptly notified of the emission, discharge, release or escape; or
>
> (iii) A release from an "aboveground storage tank" with a total capacity of 275 gallons or less or from piping connected thereto, provided that the release commences on or after the Retroactive date stated in the Declarations for the applicable location and the insured gives us immediate notice of the "pollution incident". These "pollution incidents" are only covered at "insured sites" designated on the Supplemental Schedule for the Declarations as having "aboveground storage tanks".

SOF 22 (including response); *see also* Doc. 60-2 at 30. As reflected, the endorsement does not change the language of Subsection 1.b.(5)(i) or (ii) as they originally appeared in the policy, but it does add Subsection 1.b.(5)(iii). The endorsement also slightly changes the wording of the introductory language in Subsection 1.b.(5) from "The insured provides proof there . . ." to "The

---

[2] Any bolding reflects bolding in the policy. The Court uses underlining for emphasis where needed.

insured must provide proof that there . . . ." Neither party discusses this wording change or suggests it is significant.

Quoted words in the policy are defined in the definitions section of the policy. "Environmental damage" is defined as "the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of solid, liquid, gaseous or thermal 'pollutants.'" SOF 10. "Pollutants" are "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." SOF 11. A "pollution incident" is an "emission, discharge, release or escape of 'pollutants.'" SOF 12. "Clean-up costs" are "expenses for the removal or neutralization of 'pollutants' including costs, charges and expenses incurred by geotechnical or environmental firms and their personnel to investigate, assess, remediate or monitor the effects of any 'pollution incident' covered by this insurance." SOF 13 (including response).

O'Neill sold its property as part of an asset purchase agreement on August 3, 2020. SOF 1, 43. O'Neill requested that Federated cancel the policy on August 4, 2020. SOF 44. The policy was canceled that day, and the unearned premium was refunded on August 5, 2020. SOF 45, 47. O'Neill did purchase an Extended Reporting Period Endorsement. SOF 46. That endorsement states in relevant part:

> Written notice to us within 12 months after the end of the policy period of a claim arising from a "pollution incident" that commenced before the end of the policy period but not before any applicable Retroactive Date will be deemed a claim made on the last day of the policy period or at the time the first claim from that "pollution incident" was made, whichever came first. The "pollution incident" must be from an "insured site" in the "coverage territory". In no event shall the inclusion of these claims increase the LIMITS OF INSURANCE as set forth in SECTION III.

Doc. 60-2 at 31.

O'Neill first provided notice to Federated of the pollution issue on the property on August 6, 2021, a year and two days after it canceled the policy. SOF 54. O'Neill told Federated's adjuster that the release mechanism of the contamination was "from a buried feeder pipe that entered a buried oil/water separator tank." SOF 55-56. It is undisputed that the contamination at issue originated below ground. SOF 23; *see also* Doc. 51 at 3 (stipulated fact in the Pretrial Order). There were no aboveground tanks on the property. *See* SOF 140.

Federated denied the claim on September 21, 2021. SOF 61. The denial letter stated, in relevant part:

> Coverage is not afforded under the Pollution Liability Policy nor with consideration of the extended reporting period endorsement as Federated lacks proof of a pollution incident which arose directly from a spill, overflow or release of pollutants on or above the surface of the ground which commenced after May 1, 2018 and was reported to Federated within 120 hours of the spill, overflow or release.

SOF 62; *see also* Doc. 60-14 at 8.

## II.  STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

### III.   ANALYSIS

O'Neill alleges that Federated has a duty to provide coverage and that it breached the policy in denying coverage. Doc. 51 at 14.[3] Federated moves for summary judgment and argues that there is no coverage under the policy given the unambiguous language of the policy and the undisputed facts. Doc. 53 at 1. Specifically, Federated argues that O'Neill cannot meet several of the conditions for coverage, one of which is that there was a pollution incident that arose from a spill or release of pollutants "on or above the surface of the ground." Because this issue is dispositive, the Court's analysis begins and ends with it.[4]

It is the insured's burden to establish coverage under a policy. *Corp. Lakes Prop., LLC v. AmGuard Ins. Co.*, 649 F. Supp. 3d 1143, 1148 (D. Kan. 2023). Interpretation of an insurance policy is a question of law for a court to decide. *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015). Courts should "consider the policy as a whole, rather than viewing provisions in isolation." *Id.* Unambiguous language should be "construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (internal quotation and citation omitted). Where the language is unambiguous, a court should enforce the contract as made. *BancInsure*, 796 F.3d at 1233; *Liggatt v. Emps. Mut. Cas. Co.*, 46 P.3d 1120, 1127 (Kan. 2002) ("When an insurance contract is not ambiguous, the court may not make another contract for the parties." (internal quotation and citation omitted)).

---

[3]   O'Neill also claims attorneys' fees under K.S.A. § 40-256. Doc. 51 at 14. Because the Court enters judgment for Federated, O'Neill is not entitled to fees.

[4]   Federated's other arguments are that O'Neill cannot show that the contamination of the site commenced on or after the policy's May 1, 2018 retroactive date, nor can it show that it gave notice as soon as possible or in any event within the policy's extended reporting period. *See* Doc. 60 at 1-2. Federated also contends an exclusion bars coverage because the pollution began, at least in part, before May 1, 2018. *Id.* at 2. O'Neill's cross-motion for partial summary judgment challenges Federated's defenses that notice was not timely given. *See* Doc. 56 at 1.

The Court starts with the language of the policy. Section I of the policy addresses Pollution Liability Coverage. Doc. 60-2 at 19. Subsection 1 is titled "Insuring Agreement." *Id.* Subsection 1.a. explains that Federated "will pay on behalf of [O'Neill] those sums in excess of any deductible amount that the insured becomes legally obligated to pay as . . . 'clean up costs' because of 'environmental damage' <u>to which this insurance applies</u>." *Id.* (emphasis added). Subsection 1.b., as amended by the endorsement for "Limited Coverage for Aboveground Tanks," outlines the circumstances under which the insurance applies. *See id.* at 19, 30. It states:

> b. <u>This insurance applies</u> to "bodily injury", "property damage", or "environmental damage" <u>only if</u>:
>
> (1) The "bodily injury" or "property damage" or "environmental damage" is caused by a "pollution incident" from an "insured site" in the "coverage territory;"
>
> (2) The "bodily injury" or "property damage" or "environmental damage" is caused by a "pollution incident" that commences on or after the Retroactive Date shown in the Declarations for the applicable location;
>
> (3) The insured's responsibility to pay compensatory damages because of "bodily injury" or "property damage" or "cleanup cost" [sic] because of "environmental damage" is determined in a "suit" on the merits in the "coverage territory" or in a settlement made with our prior consent; and
>
> (4) A claim for compensatory damages because of "bodily injury" or "property damage", or for payment of "cleanup costs" [sic] because of "environmental damage" is reported in accordance with Section 1, Part 2. Claims Reporting.
>
> (5) The insured must provide proof that there was a "pollution incident" from an "insured site" which arose directly from:
>
> > (i) A spill, overflow or release of "pollutants" on or above the surface of the ground which commences on or after the Retroactive Date stated in the Declarations for the applicable location and which is **reported to us within 120 hours of the spill, overflow or release**; or

8

> (ii) An emission, discharge, release or escape of "pollutants" from a "waste facility" which commences, in its entirety, on or after the Retroactive Date stated in the Declarations for the applicable location and we are promptly notified of the emission, discharge, release or escape; or
>
> (iii) A release from an "aboveground storage tank" with a total capacity of 275 gallons or less or from piping connected thereto, provided that the release commences on or after the Retroactive date stated in the Declarations for the applicable location and the insured gives us immediate notice of the "pollution incident". These "pollution incidents" are only covered at "insured sites" designated on the Supplemental Schedule for the Declarations as having "aboveground storage tanks".

*Id.* (emphasis added). Subsections 1.b.(1)-(4) are connected by semi-colons and are joined by the word "and." The word "and" is generally conjunctive, suggesting all four items must be satisfied. *See United States v. Perez-Velasquez*, 16 F.4th 729, 732 (10th Cir. 2021) (noting that "and" is generally conjunctive while "or" is generally disjunctive). Subsection 1.b.(5) then says the insured must provide proof of one of three circumstances that are joined by the word "or," which suggests only one of the items listed in Subsection 1.b.(5) needs to be satisfied. *See id.* A plain reading of this language indicates that the insurance applies "only if" all the first four conditions are all satisfied <u>and</u> the insured provides proof of at least one of the circumstances listed in Subsection 1.b.(5).

There doesn't seem to be any dispute that O'Neill can show there are "clean up costs" due to "environmental damage" caused by a "pollution incident" because of a spill of "pollutants" at the "insured site," as those terms are defined in the policy. *See* Doc. 60 at 22. Assuming O'Neill

9

can satisfy the first four items,[5] the Court turns to whether it can provide proof of at least one of the items in Subsection 1.b.(5). Subsection 1.b.(5)(ii) is not at issue because it is undisputed there is no "waste facility" on the property. Nor is there any contention that the third item in Subsection 1.b.(5)(iii), as added by the endorsement, applies because the parties agree there are no "aboveground storage tanks" on the property. SOF 140.

That leaves only Subsection 1.b.(5)(i), which considers a "spill, overflow or release of 'pollutants' on or above the surface of the ground . . . ." Doc. 60-2 at 19, 30. Because it is undisputed that the pollution incident in this case originated and occurred underground, SOF 23; *see also* Doc. 51 at 3, the condition in Subsection 1.b.(5)(i) is not met either. Because O'Neill has not provided proof of any of the circumstances in Subsection 1.b.(5), O'Neill's claim is not a claim for clean-up costs because of environmental damage "to which this insurance applies." No reasonable jury could conclude otherwise.

O'Neill contends this reading of the policy is an "unserious proposition" and a "warped interpretation." Doc. 65 at 22. First, it argues the plain language of the policy says Federated will pay O'Neill for "those sums in excess of any deductible amount that the insured becomes legally obligated to pay as . . . 'clean up costs' because of 'environmental damage.'" *Id.* at 21 (quoting the policy, Doc. 60-2 at 19). Because there is no dispute that the remediation costs on the property qualify as "clean up costs" due to "environmental damage," O'Neill claims coverage is necessarily provided for under the policy. But O'Neill's quote of the policy ignores the end of the sentence that it cites. The full sentence says Federated will pay "those sums in excess of any deductible amount that the insured becomes legally obligated to pay as . . . 'clean up costs' because of

---

[5] The parties disagree as to whether O'Neill did satisfy those items, particularly Subsections 1.b.(2) and (4). But for purposes of this order, the Court presumes the first four items in Subsection 1.b.(1)-(4) could be met.

10

'environmental damage' <u>to which this insurance applies</u>." Doc. 60-2 at 19 (emphasis added). As detailed above, the policy says the insurance applies "only if" the five subparagraphs listed in Subsection 1.b. are satisfied. They are not satisfied here because none of the circumstances in Subsection 1.b.(5) are met. O'Neill insists that the "plain language of the Policy . . . in no way preclude[s] coverage for 'clean up costs' due to 'environmental damage' originating beneath the surface of the ground." Doc. 67 at 6. While that may be true, the plain language of the policy lists specific instances where the policy applies, and none are met here.

Second, O'Neill argues that Federated improperly relied on the endorsement for "Limited Coverage for Aboveground Tanks," and that the parties did not "intend for coverage only on pollution incidents originating from storage tanks 'on or above the surface of the ground.'" Doc. 65 at 21. According to O'Neill such a limit would be nonsensical under the policy because there were no aboveground tanks on the property. *Id.* There are several problems with this argument.

As discussed in the background, an endorsement to the policy altered Subsection 1.b.(5) to add a third avenue for coverage for aboveground tanks. This endorsement added Subsection 1.b.(5)(iii) into the policy. But the endorsement only substantively modified Subsection 1.b.(5) to <u>add</u> that third paragraph. *See* Doc. 60-2 at 19, 30. Subsections 1.b.(5)(i) and (ii) were unchanged by the endorsement and are part of the policy with or without the endorsement, which O'Neill implicitly acknowledges. *See* Doc. 65 at 22 ("[E]ndorsements and the policy should be read together, and the policy remains in full force and effect except as altered by the endorsement.").

O'Neill claims that Federated relied on the endorsement to deny coverage. But that is not supported by the record. The denial letter does not cite the endorsement regarding aboveground tanks. *See generally* Doc. 60-14. It only cites the original policy language, including Subsection 1.b.(5)(i) and (ii). *Id.* at 2. The letter denied coverage because there was no pollution incident

arising from a spill, overflow, or release of pollutants on or above the surface of the ground. *Id.* at 8. This is the language of Subsection 1.b.(5)(i), which was in the original policy and was not changed by the endorsement. Thus, Federated did not deny coverage based on the endorsement.

O'Neill goes on to argue that the denial unfairly limits coverage to "pollution incidents originating from storage tanks 'on or above the surface of the ground.'" Doc. 65 at 21. According to O'Neill, this was unfair because it is undisputed there were no aboveground tanks on the property. *Id.* O'Neill claims that "contorting a provision specific to surface-level spills into a threshold barrier for all coverage . . . would render the Policy's core protections illusory." Doc. 67 at 1. This argument misreads the different disjunctive provisions in Subsection 1.b.(5) and misconstrues the basis for the denial of coverage.

Aboveground tanks are only discussed in Subsection 1.b.(5)(iii). Subsection 1.b.(5)(i) does not discuss aboveground tanks (or any type of tank) at all and does not limit coverage to spills originating from aboveground tanks. The existence—or nonexistence—of aboveground tanks on the property is irrelevant to whether Subsection 1.b.(5)(i) (regarding spills on or above the surface of the ground) applies. Nor does denying coverage based on this provision make coverage under the policy illusory. Coverage could still be provided if O'Neill provided proof of a pollution incident arising from the spill of a pollutant above the surface of the ground. O'Neill has not done so and, under the undisputed facts, cannot do so. The fact that coverage does not exist under the specific circumstances at issue does not render the policy illusory.

Third, O'Neill seems to suggest Subsection 1.b.(5) only applies when it can be factually satisfied. *See id.* at 5 ("Section 1.b.(5) of the policy adds a fifth contingent condition for coverage in situations where a pollution incident occurs on or above ground or from 'waste facilities.'"). O'Neill offers no support for this contention. Nor is it logical. If the policy broadly covered any

clean up costs for environmental damage due to a pollution incident, as O'Neill contends, it's unclear why Subsection 1.b.(5) would be needed at all. In other words, O'Neill's reading would render Subsection 1.b.(5) surplusage.[6] This also runs counter to the plain language of the policy, which says the insurance applies "only if" certain circumstances, including those listed in Subsection 1.b.(5), are met.

In sum, the policy states it applies "only if" certain criteria are met. Under the undisputed facts, O'Neill cannot satisfy at least one of those conditions. O'Neill therefore fails to carry its burden of showing that a reasonable jury could find that there is coverage. Federated is entitled to summary judgment.

## IV.  CONCLUSION

The Court finds there is no coverage and grants Federated summary judgment on that point. It does not reach the other issues raised in Federated's motion, including whether O'Neill's reporting of the claim a year and two days after the policy ended satisfied the notice provisions or whether an exclusion applies. It denies the motion as moot as to those arguments. Similarly, the Court does not reach the issues in O'Neill's partial motion for summary judgment, which also pertain to the notice issue, because it has found there is no coverage under the policy.

THE COURT THEREFORE ORDERS that Defendant Federated's Motion for Summary Judgment (Doc. 53) is GRANTED IN PART. Federated is entitled to summary judgment because the undisputed facts show that O'Neill cannot establish there is coverage under the policy because the pollution incident did not arise "on or above the surface of the ground." Federated is also granted summary judgment on O'Neill's claim for attorneys' fees under K.S.A. § 40-256. The

---

[6] There are additional notice requirements in Subsection 1.b.(5). Doc. 60-2 at 19, 30. But the language does not limit the impact of that provision to the additional notice requirement. *See id.* (requiring proof of a spill "on or above the surface of the ground . . . <u>and</u> which **is reported to us within 120 hours** . . ." (underlining added)).

Court does not reach the other arguments raised in the motion and the remainder of the motion is DENIED AS MOOT and WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Plaintiff O'Neill's Motion for Partial Summary Judgment (Doc. 56) is DENIED AS MOOT and WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Defendant Federated's Motion to Exclude Plaintiff's Expert Witness (Doc. 54) is DENIED AS MOOT and WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: November 26, 2025              /s/ *Holly L. Teeter*
                                                        HOLLY L. TEETER
                                                        UNITED STATES DISTRICT JUDGE